61  185<br/>61  467

M. T. BRADY v. E. C. MOULTON, Treasurer, and Another.[1]

May 24, 1895.

Nos. 9385—(97).

**Constitution—Grant of Corporate Powers.**

Sp. Laws 1891, c. 175, authorizing the village of Winnebago City to issue bonds for waterworks, was not a grant of "corporate powers or privileges," within the meaning of subdivision 7 of the constitutional amendment of 1881.

**Special Election—Notice—Computation of Time.**

The act provided that "not less than ten days' notice" of the special election should be given by publishing the same in a newspaper. *Held*, that in the computation of time the day of the publication should be excluded and the day of election included.

Action in the district court for Faribault county against the village of Winnebago City and E. C. Moulton as its treasurer. From the order of Severance, J., sustaining the demurrer of defendants, plaintiff appealed. Affirmed.

*Benj. G. Reynolds*, for appellant.

*Andrew C. Dunn*, for respondents.

[1] Reported in 63 N. W. 489.

MITCHELL, J.   Action to enjoin the payment of village "water bonds," on the ground that the act authorizing their issue (Sp. Laws 1891, c. 175) was void, because within the inhibition of the constitutional amendment of 1881, prohibiting the enactment of any special or private laws "granting corporate powers or privileges except to cities." The defendant village was incorporated under Sp. Laws 1874, c. 7. The village contends that—First, independently of the act of 1891, it had authority, under its original charter, to issue these bonds as incident to its granted power to make, construct, and operate waterworks for supplying its inhabitants with water; second, the act of 1891 was not a grant of corporate powers or privileges, within the meaning of the constitutional provision referred to; third, even if the bonds were originally invalid, they were subsequently validated by Laws 1893, c. 156.

Under the view we take of the law, it is only necessary to consider the second of these contentions. The constitutional amendment of 1881 was, with certain changes, not material here, copied bodily from the constitutional amendment of 1871 in the state of Wisconsin, subdivision 7 (the one here involved) being verbatim subdivision 7 of the amendment of 1871 in that state. In 1874—seven years before we adopted it—this subdivision had been construed by the supreme court of Wisconsin as relating only to acts of incorporation thereafter to be granted, and as not impairing the legislative power of alteration or repeal in respect to charters granted prior to the adoption of the constitutional amendment. Attorney General v. Railroad Cos., 35 Wis. 425, 560. In that case, Chief Justice Ryan, speaking for the court, said: "We feel bound to hold, and find no difficulty in holding, the phrase in the amendment, 'to grant corporate powers or privileges,' to mean 'in principio donationis,' and equivalent to the phrase, 'to grant corporate charters.' This is implied not only by the word 'grant,' but also by the word 'corporate.' A franchise is not essentially corporate; and it is not the grant of franchise which is prohibited, but of corporate franchise,—that is, as we understand it, franchise by act of incorporation."

This construction has been uniformly adhered to by the courts of that state. From 1881 down to the adoption of the much more sweeping and radical amendment of 1891, the legislature of this

state assumed and acted upon the same construction. The acts are very numerous amending by special law the special charters of villages organized prior to 1881. Large interests are doubtless now dependent upon the validity of such legislation. To now declare it invalid would result in very serious consequences. In view of these facts, we are of opinion that, whether this construction, considered as a new question, is right or wrong, it ought now to be followed and adhered to. An additional reason for such a conclusion is the fact that such a construction can only affect the past, inasmuch as the amendment of 1881 on the subject of special legislation has been superseded by the more sweeping one of 1891, adopted in November, 1892. It is also significant that in subdivision 10 of the amendment of 1881 prohibiting the enactment of special laws incorporating any town or village there were omitted the words (found in the Wisconsin amendment), "or to amend the charter thereof." Our conclusion, therefore, is that Sp. Laws 1891, c. 175, authorizing the defendant village to issue these bonds, was not a grant of a corporate power or privilege, within the meaning of the constitutional amendment of 1881.

The act of 1891 provided for the submission of the proposition of issuing the bonds to the voters at a special election to be called by the village council, "giving not less than ten days' previous notice thereof" by publishing the same in some newspaper, etc. The notice was first published May 16, and the election was called for May 26. The plaintiff claims that this did not constitute 10 days' notice, because in the computation of time both the day of the first publication and the day of election should be excluded. This is not the proper rule of computation. The day of the first publication is to be excluded, and the day on which the election was held is to be included. Coe v. Caledonia & M. R. Co., 27 Minn. 197, 6 N. W. 621; Spencer v. Haug, 45 Minn. 231, 47 N. W. 794.

Order affirmed.